**Cathleen R. ROMAIN,**
**Plaintiff-Appellant,**

v.

**Marvin KUREK, individually; Patricia Teays, personal representative of the estate of Robert Teays; the White Horse Inn, a corporate assumed name for Bania-Hensley Corporation, a Michigan corporation; jointly and severally, Defendants-Appellees.**

**No. 86–2101.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 15, 1987.

Decided Dec. 31, 1987.

Otis M. Underwood (argued), Underwood & Associates, P.C., Oxford, Mich., for plaintiff-appellant.

William E. Pilchak (argued), The Fishman Group, Kirk D. Falvay, Bloomfield Hills, Mich., for defendants-appellees.

Before MARTIN, JONES and BOGGS, Circuit Judges.

PER CURIAM:

This is an appeal by plaintiff Cathleen Romain from an involuntary dismissal pursuant to Fed.R.Civ.P. 41(b) in favor of defendant, the Estate of Robert Teays, in a sex discrimination action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (1982). The district court granted defendant's Rule 41(b) motion after concluding that plaintiff had not established an "identity of interest" between Robert Teays and the White Horse Inn, the business entity named in the charge filed with the Michigan Civil Rights Commission, and that therefore the failure to name Teays in the administrative charge deprived the court of jurisdiction to enter judgment against Teays. For the following reasons we affirm the judgment as to the Estate of Teays, but remand to the district court for clarification as to the status of the other defendants involved in this litigation.

### I.

Plaintiff, Cathleen Romain, was employed as a waitress at the White Horse Inn, a bar/restaurant business owned and operated by the Bania–Hensley Corporation. On December 2, 1980, Romain returned from a four-day authorized absence from employment to find that she had not been scheduled to work. Upon discovering this, Romain approached defendant Marvin Kurek, the manager of the White Horse, and asked him why she had not been scheduled. Kurek took Romain over to the table of defendant Robert Teays who was apparently working temporarily as a manager of the restaurant. Romain, who was 12 weeks pregnant at the time, alleged that Teays told her she could not work at the White Horse Inn in her pregnant condition and that she should come back after she had the baby.

Although Romain had never met or seen Teays before her encounter with him on December 2nd, she later learned that he had been introduced to the staff as the new manager sometime during her absence, and, together with Kurek, was considering entering into an agreement with the Bania–Hensley Corporation to purchase the restaurant. In fact on October 27, 1980, a little over a month before Romain was told she could not work at the restaurant, Kurek and Teays had entered into an agreement to purchase all of the stock of the Bania–Hensley Corporation. The closing of this stock purchase—that is, the actual purchase—was scheduled to occur within ten days after receipt of approval of the stock transfer from the Michigan Liquor Control Commission ("LCC"). It is undisputed that the sale to Teays was never consummated as Teays himself withdrew his application to purchase the Inn sometime around the end of December 1980. Teays communicated the fact of his withdrawal to the LCC at that time, and his application for approval was accordingly discontinued by the LCC in mid-January 1981.

On January 19, 1981, Romain visited the offices of the Michigan Department of Civil Rights and filed a charge of discrimination. Since Michigan is a "deferral state," the state commission performs the investigative role that the EEOC would normally perform. In her charge, plaintiff named the White Horse Inn as the respondent. Teays was not named as a respondent nor was his name mentioned in the complaint. According to Romain, Teays, or any individual for that matter, was not mentioned in the charge because the Department's "usual practice" did not permit a person bringing a charge of employment discrimination to name individuals. On January 27, 1981, the "Notice of Charge of Discrimination" was mailed to the White Horse Inn.

On October 2, 1981, the Michigan Department of Civil Rights' staff report was completed, and a conciliation conference was recommended to award Romain monetary relief. The record shows that all of the information regarding conciliation was addressed to Kurek alone as manager of the White Horse Inn. Regardless of what Teays's role in the operation may have been at the time Romain was discharged, the record plainly shows that he was no longer involved by the time the conciliation efforts began.

After some initial cooperation by Kurek, it eventually became clear to plaintiff that the conciliation efforts were not going to succeed. She retained counsel and a right to sue letter was issued on February 22, 1982.

On April 15, 1982 plaintiff filed her complaint in district court. She alleged that she was discharged from her waitress position at the White Horse Inn in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982). Named as defendants were Kurek, Teays (although plaintiff spelled it "Tayes"), and Bania–Hensley Corporation, doing business as the White Horse Inn. Plaintiff sought compensatory damages in excess of $10,000 and "punitive damages" of $1 million.

None of the defendants named in the district court action filed timely answers or other pleadings and the district court entered a default judgment finding all of the defendants jointly and severally liable. Defendant Teays then entered his appearance and filed a motion to set aside the default judgment on the ground that he had not been brought before the court by either actual or constructive service. The district court granted the motion to set aside the default judgment "as to him" (Teays), and but stated in the order that since joint several liability had been adjudged against all defendants, the default judgment would be set aside as to all. However, no order was ever entered specifically setting the default judgment aside as to the other defendants, and in subsequent orders the district court noted that the case had been disposed of as to all defendants.

After Teays filed an answer, and the parties engaged in some discovery, he filed a motion for summary judgment on the ground that plaintiff had failed to name him, Teays, in her charge with the Michi-

gan Department of Civil Rights. On April 27, 1984, the district court granted Teays's motion upon finding that plaintiff had named only the White Horse Inn in her charge with the Department. The court invoked the rule stated by this court in *Geromette v. General Motors Corp.*, 609 F.2d 1200 (6th Cir.1979), *cert. denied*, 446 U.S. 985, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980), that suit may not be filed in the district court under Title VII against any party not named in the original discrimination complaint.

Plaintiff appealed the district court's grant of summary judgment to this court. On September 18, 1985, a panel of this court reversed and remanded to the district court for further proceedings. *Romain v. Kurek*, 772 F.2d 281 (6th Cir.1985) (per curiam) (*"Romain I"*). The court in *Romain I* held that the district court should reconsider its decision in light of this circuit's then-recent decision in *Jones v. Truck Drivers Local Union No. 299*, 748 F.2d 1083 (6th Cir.1984), where we stated:

> Filing an EEOC charge against a party is a necessary prerequisite to suit. It is well settled that a person not named in an EEOC charge may not be sued under Title VII *unless there is a clear identity of interest between it and a party named in the EEOC charge* or it has unfairly prevented the filing of an EEOC charge.

748 F.2d at 1086 (citations omitted) (emphasis added).

The court in *Romain I* felt that certain documents and affidavits filed by plaintiff created a genuine issue of material fact as to whether there was a "clear identity of interest" between Teays and the White Horse Inn. Specifically, the court pointed to the following three things as possibly bearing on the identity of interest issue: 1) plaintiff's affidavit alleging that Teays was sitting with the owners of the restaurant and was the one who told her that she was discharged because she was pregnant; 2) the copy of the stock purchase agreement filed with the LCC by which Teays had agreed to purchase an interest in the White Horse Inn; and 3) the affidavit of Mr. Edward Chastang, the Director of the Enforcement Bureau for the Michigan Department of Civil Rights, in which he stated it was the usual practice of the Civil Rights Commission not to permit a person bringing a charge of discrimination to name individuals nor to investigate the corporate ownership of an employer. The court accordingly remanded to the district court for a consideration of the identity of interest question in light of these factual issues.[1]

On November 10, 1986, the remanded case was called for trial in the district court before Judge Stewart Newblatt. The court ordered that plaintiff proceed only with the jurisdictional questions initially. Plaintiff's proof on the issue of jurisdiction consisted of the testimony of plaintiff and a former part-time waitress from the White Horse Inn, Mary Schroeder. In addition, certain documents were admitted upon the stipulation of the parties, including the stock purchase agreement and the previously submitted affidavit of Mr. Chastang. Plaintiff also admitted the deposition testimony of the late Mr. Teays. During the pendency of plaintiff's case-in-chief, defendant compelled the introduction of a variety of documents pursuant to Fed.R.Evid. 106, including a number of documents that demonstrated that Teays never became a shareholder, officer, or director of the Bania–Hensley Corporation.

At the close of plaintiff's case, defendant Teays moved for an order of involuntary dismissal pursuant to Fed.R.Civ.P. 41(b),[2] alleging that plaintiff failed to prove that a

---

**1.** During the pendency of the first appeal, defendant Teays passed away. The case was subsequently defended by the Estate of Robert Teays.

**2.** Rule 41(b) provides in pertinent part:
After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant ... may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all of the evidence.
Fed.R.Civ.P. 41(b).

"clear identity of interest" existed between Teays and either Bania–Hensley or the White Horse Inn. On November 13, 1986, the court issued a memorandum opinion and order granting defendant's Rule 41(b) motion. The court specifically found that there was no identity of interest between Teays and the White Horse Inn/Bania–Hensley Corporation at any time that would excuse the failure to name Teays. Plaintiff filed this timely appeal.

## II.

A district court's findings of fact made pursuant to a Rule 41(b) motion are reviewed by an appellate court under the clearly erroneous standard. *Simpson v. United States,* 454 F.2d 691, 692 (6th Cir. 1972) (per curiam); *see also Woods v. North American Rockwell Corp.,* 480 F.2d 644, 645–46 (10th Cir.1973); *Robinson v. M/V Merc Trader,* 477 F.2d 1331, 1332 (5th Cir.1973) (per curiam). Moreover, in determining whether a motion to dismiss under Rule 41(b) should be granted, the court is not obligated to view the evidence in the light most favorable to the plaintiff. *Hersch v. United States,* 719 F.2d 873, 876–77 (6th Cir.1983).

As this court indicated in *Jones v. Truck Drivers Local Union No. 299,* 748 F.2d 1083 (6th Cir.1984), an administrative charge must be filed with the EEOC before a discrimination plaintiff can bring a Title VII action in federal district court. *Jones,* 748 F.2d at 1086. A corollary of this general rule is that a party must be *named* in the EEOC charge before that party may be sued under Title VII "unless there is a clear identity of interest between [the unnamed party] and a party named in the EEOC charge...." *Id.*

Two goals are advanced by requiring a plaintiff to name the Title VII defendant in the charge filed with the EEOC. First, the charge serves to notify the defendant of the discrimination claim alleged against him. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 905 (7th Cir.1981), *cert. denied sub nom. Chicago Journeymen Plumbers' Local Union No. 130 v. Plum-*

*mer,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). By receiving notice of the claim, a defendant is able to preserve evidence that could be useful in his defense. Second, by naming the charged party and bringing him before the EEOC, that person is able to participate in conciliation efforts directed at securing voluntary compliance with the Act. *Id.* Conciliation is a primary goal of Title VII and provides an avenue for compliance without the resort to the expense and inconvenience of litigation.

The failure to name a Title VII defendant as a respondent in the EEOC charge will be excused if an "identity of interest" is found to exist between the named and unnamed parties. The "identity of interest" exception acknowledges the reality that laymen, unassisted by trained lawyers, initiate the process of filing a charge with the EEOC, and accordingly prevents frustration of the remedial goals of Title VII by not requiring procedural exactness in stating the charge.

Courts generally find an identity of interest where the unnamed party has been provided with adequate notice of the charge under circumstances which afford him an opportunity to participate in conciliation proceedings aimed at voluntary compliance. *Eggleston,* 657 F.2d at 905. As one court observed:

> A suit is not barred 'where there is sufficient identity of interest between the respondent and the defendant to satisfy the intention of Title VII that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation.'

*Greenwood v. Ross,* 778 F.2d 448, 451 (8th Cir.1985) (quoting *Romero v. United Pacific R.R.,* 615 F.2d 1303, 1311 (10th Cir. 1980)).

In *Glus v. G.C. Murphy Co.,* 562 F.2d 880 (3d Cir.1977), the Third Circuit developed a useful test for determining whether an identity of interest exists so as to excuse a Title VII plaintiff's failure to name a defendant in the EEOC charge. That test, which is made up of four factors, looks at

the relationship between the named and unnamed parties at the time the charge is filed and conciliation efforts occur:

(1) [W]hether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;

(2) [W]hether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

(3) [W]hether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;

(4) [W]hether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 888.

In the instant case, the district court analyzed the identity of interest question under the frameworks set out in both *Eggleston* and *Glus,* and concluded that plaintiff had not established an identity of interest between Teays and the White Horse Inn so as to excuse the failure to name Teays in the administrative charge. We agree with this conclusion. In terms of the *Eggleston* test, the evidence before the district court plainly showed that Teays did not receive adequate notice of the charge under circumstances that would have given him an opportunity to participate in conciliation proceedings. By the time the charge was received by the White Horse Inn on January 27, 1981, Teays was no longer associated with the restaurant. In late De-

cember or early January he had removed himself from consideration as a possible purchaser of the business and had withdrawn the application that had earlier been filed with the LCC for approval of the contemplated purchase. Further, the evidence supported the conclusion that Teays did not have an opportunity to participate in the conciliation proceedings. All correspondence concerning the conciliation efforts were addressed to Kurek alone as manager of the White Horse Inn. Moreover, Kurek was not even contacted about conciliation until November 1981, which was nine months after Teays's connection with the restaurant had ended.

Similarly, in terms of the *Glus* factors, we believe the district court's conclusions were supported by the evidence and were not clearly erroneous.[3]

While not disputing any of the district court's factual conclusions, plaintiff argues that the court erred in focusing on whether Teays actually knew of the charge of discrimination when it was received by the White Horse Inn on January 27, 1981. She argues that since *Romain I* had found that the failure to name could be excused if there was an identity of interest, the court had implicitly suggested that Teays's actual awareness of the charge was not a factor that had to be proven. She believes that this is especially true here because the Michigan Department of Civil Rights did not permit her to name any individuals in the charge, which would have been the only way of ensuring actual notice.

This argument misconceives both this court's decision in *Romain I* and the district court's decision on remand. In *Romain I* this court had simply suggested

---

3. The district court's findings with respect to the four *Glus* factors are set out below:

(1) The role of Teays through reasonable efforts by claimant, could have been ascertained at the time of filing of the EEOC complaint.

(2) The interests of the White Horse Inn and/or Bania–Hensley Corporation were not so similar *during the important times in this case* to those of Teays that for purposes of voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC findings.

(3) Teays's absence from the EEOC proceedings may have resulted in actual prejudice to Teays although no finding one way or the other can here be made except to note that he could not consider conciliation nor could he preserve evidence or refresh his memory based on the earliest reasonable notification such as that given on January 27, 1981.

(4) Teays at no time represented to plaintiff that her relationship to him should be through "The White Horse."

(emphasis in original).

that Teays's lack of actual awareness of the charge was not in itself controlling in determining whether the failure to name him was a bar to the Title VII action. The court never intimated that actual notice could not be considered as a factor in determining whether an identity of interest existed. Further, the district court on remand did not focus solely on Teays's failure to receive actual notice of the charge. Instead, the court applied an identity of interest analysis and concluded that the notice to the White Horse Inn was not sufficient under this analysis to serve as notice to Teays such as to allow him a chance to participate in conciliation. The court never stated, nor did it imply, that Teays's lack of actual notice was the sole reason for its conclusion that plaintiff had not established an identity of interest under *Eggleston* and *Glus.*

Plaintiff makes much of the fact that the Michigan Department of Civil Rights does not allow a claimant to name individuals in the charge. However she only demonstrated that this was the "usual practice" of the Department. She never suggested that the Department actually prevented her from naming Teays or that she had even requested that Teays be named. In fact, aside from the affidavit of Mr. Chastang, plaintiff did not produce a single witness from the Department to testify as to its handling of the case. In any event, even if she could establish that the Department had prevented her from naming Teays, plaintiff would still have to show that a clear identity of interest existed between Teays and the White Horse Inn. She has not done that here.

Plaintiff also argues that the identity of interest should be determined as of the date of the alleged discrimination. Otherwise, plaintiff argues, a wrongdoer like Teays could always avoid responsibility for unlawful conduct by removing himself from the business. In plaintiff's view, Teays clearly had an identity of interest with the White Horse Inn at the time of the discriminatory act and he should therefore not be allowed to escape liability simply because his relationship with the business

changed by the time the charge was filed. This argument is without merit.

In the first place, plaintiff cites no cases which support the proposition that in applying the identity of interest analysis the focus is to be on the date that the alleged discrimination occurred. Both *Eggleston* and *Glus,* which had been cited with approval by this circuit in *Jones,* look to circumstances existing at the time of the filing and at the time of conciliation. Furthermore, we note that this focus on circumstances existing after the actual discriminatory act does not leave a plaintiff without a remedy in those situations where an individual wrongdoer has left the scene and can not be sued in a Title VII action. If, for example, the wrongdoer was an agent of the employer, and the evidence here suggests that Teays was, then the employer will generally be responsible for remedying the unlawful conduct. *See EEOC v. Gaddis,* 733 F.2d 1373, 1380 (10th Cir.1984); *Flowers v. Crouch–Walker Corp.,* 552 F.2d 1277, 1282 (7th Cir.1977).

Finally, plaintiff argues in her Reply Brief, apparently for the first time, that the "naming" requirement is not a "jurisdictional" prerequisite to suit. Therefore, she argues, the district court's decision should be reversed because it was based on the erroneous belief that the court lacked jurisdiction over Teays since he had not been named in the charge. Plaintiff cites no Sixth Circuit precedent for this argument. Indeed the *Jones* decision itself appears to suggest that in this circuit the naming requirement *is* a jurisdictional prerequisite to suit. This is certainly the inference that can be drawn from this court's decision in *Romain I.* If the court there had believed that the naming requirement was *not* a jurisdictional prerequisite to suit, it could have reversed the grant of summary judgment without any need to remand on the identity of interest question.

Plaintiff does cite several cases from other circuits to support her argument that the naming requirement is not jurisdictional. *See Greenwood v. Ross,* 778 F.2d 448 (8th Cir.1985); *Liberles v. County of Cook,* 709 F.2d 1122 (7th Cir.1983); *Jackson v.*

*Seaboard Coast Line R.R. Co.*, 678 F.2d 992 (11th Cir.1982). It is true that these cases recognize that the failure to name a defendant in an EEOC charge does not deprive a federal court of subject matter jurisdiction over that defendant. However, these cases *do not* suggest that the "naming" requirement is no longer a condition precedent to bringing suit. Under these cases a plaintiff must still name a defendant in the EEOC charge in order to later bring suit against that person, and the failure to name will only be excused where there is a clear identity of interest between the named and unnamed party. Consequently while in these circuits the naming requirement is not technically jurisdictional, it nevertheless operates like a statute of limitations in that if it is raised in a timely fashion it serves as a shield to prevent the commencement of the cause of action against the unnamed defendant.

Accordingly, even if this court were to decide that the naming requirement is not a jurisdictional prerequisite to suit, we would nevertheless affirm the district court's decision. Teays raised the failure to name as a defense at the outset and did so with specificity. No clear identity of interest was found to exist. Therefore, regardless of whether the failure to name is considered a jurisdictional bar or the nonfulfillment of a condition precedent, the suit cannot proceed against Teays and the dismissal was proper as to him.

For the foregoing reasons we AFFIRM the judgment of the district court. However, because it is not clear from the record as to the status of the other defendants, *i.e.* the White Horse Inn and Marvin Kurek, we REMAND to the district court for clarification as to these defendants and for further proceedings if necessary.